**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AKUNA CAPITAL LLC, a Delaware limited liability company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-05401 |
| | ) |
| BRENDAN BERGERSON, an individual, | ) |
| RYAN MARTY, an individual, | ) |
| and ERIC EVANS, an individual, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR INJUNCTION AND OTHER RELIEF

Plaintiff, Akuna Capital LLC ("Plaintiff" or "Akuna"), by and through its undersigned counsel, Gary I. Blackman, Peter F. Donati and Erin M. Mayer with Levenfeld Pearlstein, LLC, hereby brings this Complaint against Defendants, Brendan Bergerson, Ryan Marty and Eric Evans (all, collectively, "Defendants").

## NATURE OF THE ACTION

As discussed below, Plaintiff, Akuna, is a technology-driven trading firm. One of the most profitable and successful trading desks within Akuna is its Agricultural Desk, which trades commodities such as grain and livestock. The profitability of the Agricultural Desk has been driven by Akuna's investment of significant time and resources in developing and exploiting proprietary trading strategies, models, and technology. Defendants, Bergerson, Marty, and Evans all were employed by Akuna as traders on the Agricultural Desk. This case involves the hiring by Belvedere Trading LLC ("Belvedere"), a competitor of Akuna, of Defendants, resulting in the misappropriation of Akuna's trade secrets and other confidential and proprietary information and the replication of the successful trading strategies, models, and technology of Akuna's Agricultural

Desk without having to make the same investments as Akuna in their independent development, and otherwise wrongfully compete against Akuna, all in violation of contracts signed by the Defendants and other applicable law, including the Defend Trade Secrets Act and the Illinois Trade Secrets Act and the common law relating to tortious interference.

## PARTIES

1.      Akuna is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

2.      Brendan Bergerson ("Bergerson") is an individual who resides in Chicago, Illinois.

3.      Ryan Marty ("Marty") is an individual who resides in Chicago, Illinois.

4.      Eric Evans ("Evans") is an individual who resides in Chicago, Illinois.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction in this Action pursuant to 28 U.S.C. § 1338(a) because this is a civil action arising under the Federal Defense of Trade Secrets Act, 18 U.S.C. § 1832 *et seq*. The Court has supplemental jurisdiction over claims arising under the laws of Illinois pursuant to 28 U.S.C. § 1367 because Plaintiff's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

6.      Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in the Northern District of Illinois and the Employment Agreements at issue in this case provide that: "*Any and all litigation arising out of [these] Agreement[s] shall be conducted only in courts located in Chicago, Illinois and such courts shall have the exclusive jurisdiction to hear and decide such matters*."

## CHOICE OF LAW

7.      Pursuant to the Employment Agreements signed by the Defendants, all matters and disputes arising under or related to the Employment Agreements, and the adjudication of all obligations set forth therein, are to be governed under laws of the State of Illinois.

## FACTUAL BACKGROUND

### A.  The Business of Akuna

8.      Akuna is a technology driven proprietary trading firm specializing in derivatives market-making and sophisticated modeling with a commitment to cutting-edge technology.  As a "market maker" Akuna quotes prices at which it is willing to both buy and sell options and other financial products and, as such, provides liquidity to the market, making markets more efficient.

9.      Akuna's intrinsic value as an ongoing concern, its competitive advantage over other trading firms, and its short and long-term success is grounded, almost entirely, on developing creative ways to use its proprietary technology, trading strategies and mathematical models to implement advanced solutions that meet the needs of a competitive trading environment.

10.      For example, Akuna uses proprietary trading strategies based on "event pricing" that allow it to trade through events; uses seasonal volatility research that permits it to conduct trades at unusually long time-frames compared to the market; and relies on unique data sets to determine when opportunities exist in the market.

11.      Also, Akuna has exclusive relationships with various counter-parties whereby it provides liquidity for those market counter-parties on non-listed products.

**B. Akuna Hires the Defendants**

12.     Before coming to Akuna, Bergerson and Ryan worked at Belvedere from July 2009 to March/April 2016. Bergerson and Ryan were hired by Akuna in October 2017 and April 2018, respectively. Defendant, Evans, began work at Akuna in August 2017.

13.     On the Agriculture Desk at Akuna, Bergerson traded oil and grains/livestock (corn, bean, wheat, soy meal, soy oil, live cattle, feeder cattle, and lean hogs). Marty also traded oil at Akuna and Evans traded so-called "softs" such as sugar, coffee, cocoa, cotton, frozen concentrated orange juice, and canola. Thus, between the three of them, they had knowledge of almost all of the different parts of Akuna's Agricultural Desk.

14.     Akuna's Agricultural Desk is one of its most successful trading desks and has achieved substantial profitability through the development and exploitation of proprietary trading strategies, models, and technology.

15.     Although Bergerson and Marty had been commodities traders previously, prior to coming to work for Akuna they did not have an understanding for and were not able to make use of Akuna's proprietary trading strategies, models, and technology.

16.     In addition, at Akuna, Bergerson and Ryan, both acted as the primary interface with various brokers and market counter-parties, and at Akuna's behest and through the expenditure of Akuna's resources, worked to develop relationships with those brokers and counter-parties that provided a competitive advantage in the marketplace.

**C. The Agreements Signed by Defendants**

17.     As a condition to, and in consideration of, the future or continued employment by and compensation from Akuna, and for good and other consideration, Defendants each signed a

*Restrictive Covenant and Employee Work Made for Hire Agreement* (collectively, the "Employment Agreements"). Defendant Evans was given additional consideration of, *inter alia*, a $10,000 Signing Bonus in consideration for his signing the Employment Agreement. See, *Employment Agreements*, attached a **Group Exhibit 1** and *Evans Offer Letter*, attached as **Exhibit 2**.

18.     The Employment Agreements, signed by each of the Defendants, required Defendants to keep confidential the highly proprietary technology, trading strategies and mathematical models that are the lifeblood of Akuna's business. The Employment Agreements define "Confidential Information" as follows:

> 4.1 <u>Definition</u>. During the course of employment with the Company, Employee will have access to (i) trade secrets and other non-public information relating to the Company or its affiliates, which may include, but not be limited to: source code of trading applications, trading or investment strategies, methodologies and results; trading or investment systems; investment or investment instrument provisions of the Company or its affiliates; risk management models; revenue models; quantitative and other strategies and methodologies, procedures and techniques; business plans and strategies, pricing and other financial information; lists of investors, clients, vendors and suppliers of the company or its affiliates; ay confidential information of any such investors, clients, vendors or suppliers; the course code and any non-public information or data comprising or related to the Work; and other proprietary technologies and processes and other proprietary information used by the company or its affiliates in connection with their respective businesses and/or which the Company or any of its affiliates is obligated to any third party to maintain as confidential, and (ii) any information concerning the Company's or its affiliates; investment or trading performance, including the profits and losses therefrom, return on investment and other performance or "track record" information (collectively, the "**Confidential Information**"). Employee acknowledges that the Confidential Information is vital, sensitive, confidential and proprietary to the Comp[any and/or its affiliates. Notwithstanding the generality of the foregoing, clause (i)

of the definition of "Confidential Information" does not include any information, materials, or data that is or becomes generally available to the public other than as a result of Employee's unauthorized direct or indirect acts.

19.     In the Employment Agreements, the Defendants specifically acknowledged that they would be given access to Akuna's Confidential Information:

> 4.2 <u>Acknowledgements</u>. Employee acknowledges that: (i) each and every component of the Confidential Information has been developed by the Company and its affiliates at significant effort and expense and is sufficiently secret to derive economic value from not being generally known to others; (ii) each and every component of the Confidential Information constitutes a valuable trade secret of the Company and its affiliates; and (iii) the protection and preservation of such Confidential Information provides the Company and its affiliates with the competitive advantage in the market in which they compete and has played, and will continue to play, a critical role in the Company's and its affiliates' financial success.

20.     The Employment Agreements also required that Defendants, following their resignation or termination from Akuna, not solicit Akuna employees to compete with Akuna or solicit business from (defined) brokers or counter-parties for a period of eighteen (18) months:

> 5.2 <u>Non-Solicitation; Non-Interference</u>. Subject to **Section 5.5**, Employee agrees that for so long as Employee remains employed by the Company and for a period of eighteen (18) months following the Termination Date (such period, the "**Non-Solicitation Restricted Period**"), Employee shall not, except in furtherance of his legitimate duties on behalf of the Company or its affiliates, directly or indirectly, alone or in combination with any other individual, enterprise or entity, engage in any of the following:
>
> (a)     solicit, employ or engage in any capacity (whether as an employee, consultant, owner, member, independent contractor or otherwise) any Covered Employee;
>
> (b)     solicit, conduct business with, or perform services for, any of the Business Partners; provided, however, that nothing

herein shall prohibit Employee from soliciting business or performing services following the Termination Date of a type not performed or provided by the Company or any of its affiliates during his employment with the Company; or

(c)     interfere with, alter, or attempt to interfere with or alter, any relationship between the Company or any of its affiliates and any individual, enterprise or entity referred to in Sections 5.2(a) and 5.2(b) above.

For the purposes of this Agreement, (i) "**Covered Employee**" means any individual who is or was, within the twelve-month period prior to such solicitation, employment, or engagement, employed or otherwise engaged by the Company or any of its affiliates in any capacity (whether as an employee, consultant, owner, member, independent contractor or otherwise), and (ii) "**Business Partner**" means any individual, enterprise or entity that is or was, within the twelve-month period prior to such solicitation, conduct of business or engagement, an investor, strategic partner, joint venturer or similar business partner of the Company or any of its affiliates.

21.     The Employment Agreements also required that Defendants, following their resignation or termination from Akuna, abide by the following Non-Competition Provision:

5.3 <u>Non-Competition</u>. Subject to the other provisions of this **Section 5.3** and to **Section 5.5**, Employee agrees that during the period beginning on the date hereof and ending on the three (3) month anniversary of Employee's Termination Date (such period, the "**Non-Competition Restricted Period**"), Employee shall not, directly or indirectly, alone or in combination with any other individual, enterprise or entity (other than the Company or any of its affiliates), engage in any of the following activities (a) and (b) below being the "**Competitive Activities**"):

(a) engage in the Business; or

(b) render services to or with, or otherwise assist, any individual, enterprise or entity that engages in, or plans to engage in, the Business (a "**Competitive Entity**"), or otherwise enter into a business relationship with or own, operate or manage a Competitive Entity or perform any services or otherwise assist any Competitive

Entity in anticipation of engaging in any of the foregoing; provided, however, that nothing herein shall prohibit Employee from (x) rendering services following the Termination Date to a Competitive Entity that are unrelated to the Business or (y) passively owning less than one percent (1%) of the publicly traded shares of any entity.

In the event Employee proposes to engage in a Competitive Activity directly with a Covered Employee or render services to a Competitive Entity that engages (whether as an employee, independent contractor, consultant, owner or otherwise) any Covered Employee (excluding administrative and clerical employees) in the Business, then the Non-Competition Restricted Period shall be deemed to end on the eighteen (18) month anniversary of the Termination Date with respect to such Competitive Activity.

22.     The non-solicitation and non-compete covenants set forth in the Employment Agreements are reasonable restrictions and are not any broader than necessary.

**D. Akuna's Confidential, Proprietary and Trade Secret Information**

23.     Akuna's Confidential Information represents a vital resource to Akuna, and, therefore, has independent economic value because it is not known to the general public or even to people engaged in the same business as Akuna.

24.     Akuna's Confidential Information is the lifeblood of its business. Akuna spends significant financial resources each year in order to compile, create and formulate its Confidential Information

25.     Akuna has a legitimate business interest in its Confidential Information. Access to Akuna's Confidential Information would give an Akuna competitor an unfair advantage over Akuna because any competitor with access to this information could use it to conduct trading and to interfere in relationships between Akuna and its counter-parties without having made the

investment of time, labor, and capital that Akuna has made to create, compile and formulate Akuna's Confidential Information.

26.     Furthermore, access to Akuna's Confidential Information would provide Akuna's competitors with an unfair advantage over Akuna because it would provide a roadmap to compete with Akuna.

27.     Because of the importance of Akuna's Confidential Information, such information has been, and is, the subject of reasonable efforts by Akuna to maintain its confidentiality.

28.     These efforts include, but are not necessarily limited to, limiting access to its Confidential Information to only certain employees on a need-to-know basis and the use of confidentiality and non-solicit covenants as set forth in the Employment Agreements so as to protect its legitimate business interests. Akuna specifically requires that personnel with regular access to Confidential Information, including Defendants, sign restrictive covenants and non-disclosure agreements as a condition of employment.

29.     Plaintiff cannot reveal in this public filing the substantive details of all of its Confidential Information (which include its trade secrets) known to Defendants. However, Plaintiff can reveal below, in general terms, examples of Confidential Information:

(a) Akuna uses proprietary trading strategies based on "event pricing" that allow it to trade through events; uses seasonal volatility research that permits it to conduct trades at unusually long time-frames compared to the market; and relies on unique data sets to determine when opportunities exist in the market. Strategies are tailored to specific market events associated with technical product type and specific market data feeds and research that Akuna has identified as the best predictors of market movement and value.

(b) Akuna develops sophisticated mathematical formulas and development techniques to drive high level strategies optimizing efficiency in the various markets.

(c) Akuna analyzes market structure developing trading strategies that leverage the various public and private trading venues on an aggregate basis.

(d) Akuna implements these strategies using its proprietary business knowledge and planning to best test the market and exploit market opportunity.

30.     Given that a breach of the Employment Agreements would result in continuing and irreparable harm to Akuna, for which there would be no adequate remedy at law (or readily ascertainment of damages), Defendants agreed in their Employment Agreements that Plaintiff would be entitled to the issuance of an injunction against them in the event of a breach.

**a.   The Defendants Resign as a Team and Are Hired by a Competitor**

31.     On July 25, 2019, Defendants, Bergerson and Ryan, simultaneously gave notice to Plaintiff that they were resigning and going back to work for Plaintiff's competitor, Belvedere. The next day, Defendant, Evans, also resigned and, <u>as a team</u>, the three Defendants have said they plan to go to work for Belvedere. In so doing, the Defendants apparently intend to ignore the terms of their Employment Agreements.

32.      As set forth in Section 5.2 of their Employment Agreements, Defendants agreed for a period of eighteen (18) months following the termination to not: (i) solicit, employ or engage in any capacity with any Covered Employee (as defined); (ii) solicit, conduct business with, or perform services for, any of the Business Partners (as defined); or (iii) interfere with, alter, or attempt to interfere with or alter, any relationship between the Company or any of its affiliates and any individual, enterprise or entity referred to in subsections (i) and (ii).

33.     Furthermore, and under Section 5.3 of their Employment Agreements, Defendants agreed that for a period of three (3) months following the termination of their employment, the

Defendants would not compete with Akuna. However, in the event the departing employee seeks to compete along with other departing employees (as in this case), the non-compete restriction would be extended for a period of eighteen (18) months following the termination of their employment

34.     Due to the timing of their resignations and their expressed intention to join Belvedere, Plaintiff believes the departures were coordinated in violation of the Employment Agreements.

35.     In addition, it is apparent from chat messages sent by Bergerson in early July that he was already working with Belvedere to interfere in the employment relationship between Akuna and Evans and to wrongfully encourage and entice Evans to leave Akuna.

36.     The Employment Agreement thus appropriately recognized that a team of individuals taking their combined knowledge and understanding of Akuna's Confidential Information and counter-party relationships to a competitor presents a far greater threat to those legitimate business interests of Akuna than a single individual acting on his or her own.

37.     Given that the Defendants propose to join competitor, Belvedere, as a team, the non-compete restrictions expire eighteen months from their termination date or on January 25, 2021 and January 26, 2021. The Defendants have indicated that they do not intend to honor this eighteen-month restriction.

38.     Based on the foregoing and the facts set forth below, the Defendants have breached their Employment Agreements.

LP 15065360.7 \ 43828-118755

**b. Defendants Will Inevitably Disclose Plaintiff's Confidential, Proprietary Trade Secrets to Belvedere**

39.     At all relevant times, the Defendants had full access to Akuna's trading revenue and, therefore, knew exactly which strategies were making the most money and how much money was being made off of those strategies.

40.     At all relevant times, Defendants also knew all of Akuna's positions in the market and could determine how best to attack those positions and access to Akuna's Confidential Information, including detailed trading revenue for the commodities desk and firm revenue.

41.     Should Defendants become affiliated with Belvedere, Defendants will inevitably disclose Akuna's Confidential Information by virtue of the jobs they were offered and their day-to-day duties.

42.     Upon information and belief, the Defendants have already  communicated directly with Belvedere and have provided, or offered to provide, Akuna's Confidential Information to compete with Akuna in the marketplace.

43.     The inevitable disclosure of Plaintiff's Confidential Information was anticipated by the parties and made a part of the Employment Agreements:

> Acknowledgements. Employee acknowledges that (i) the Business is highly competitive and the services to be performed by Employee for the Company and its affiliates are unique and global in nature, (ii) the restrictions contained in this Section 5 are essential to protect the Company and its affiliates and the goodwill of the Business, (iii) the Company and its affiliates take significant steps to preserve and protect their respective businesses and competitive advantage, (iv) any loss or erosion of the Company's and its affiliates' competitive advantage through any Competitive Activities described below or the disruption of their respective relationships with Covered Employees and Business Partners (as defined below) would have severe repercussions on the Company's and its affiliates' respective

businesses, (v) Employee has knowingly and voluntarily signed this Agreement after determining that the provisions contained herein are of a material benefit to Employee, and that the duties and obligations imposed on Employee are fair and reasonable and will not prevent him from earning a livelihood following the Termination Date, and (vi) **in light of the work duties and other responsibilities of Employee and his routine use of Confidential Information in performing such work duties and responsibilities, any Competitive Activities (as defined below) performed by Employee <u>would inevitably result in the use and disclosure of such Confidential Information</u> in performing such Competitive Activities**. Employee further recognizes and accepts the individual responsibility that he has in the effort to protect and to preserve the Company's business and competitive advantage. (Emphasis added).

44.     Thus, the Defendants cannot work for Belvedere, without breaching their Employment Agreements or violating applicable law pertaining to trade secrets.

## COUNT I – INJUNCTION
### (All Defendants)

45.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 44 above as the allegations of this paragraph 45.

46.     All conditions precedent necessary, if any, for the enforcement of the Employment Agreements have been satisfied.

47.     The non-solicitation and non-compete covenants are reasonably necessary to protect Akuna's legitimate business interests, including its interests in the Confidential Information and broker and counter-party relationships to which the Defendants were given access by reason of their employment at Akuna.

48.     The Defendants have breached their obligations under their Employment Agreements by violating their non-compete and non-solicit provisions in their Employment

Agreements and by accepting employment with a competitor of Plaintiff to whom Confidential Information will be inevitably shared.

49.     Akuna has been injured irreparably as a direct and proximate result of the breaches of the Employment Agreements.

50.     Akuna has no adequate remedy at law and is suffering irreparable harm because the Defendants' conduct is eroding its competitive position, a loss which is incapable of being measured in monetary damages.

51.     The balance of the equities favors the requested injunctive relief.

52.     The requested injunctive relief is in the public interest.

WHEREFORE, Akuna Capital LLC requests that this Court enter judgment against the Defendants and award the following relief:

a)      Preliminary and permanent injunctions restraining and enjoining the Defendants from continuing to breach their Employment Agreements, specifically enforcing the non-solicitation and non-competition covenant of their Employment Agreements) for the term of eighteen (18) months from the date of the entry of judgment herein;

b)      Preliminary and permanent injunctions restraining and enjoining the Defendants from continuing to breach their Employment Agreements;

b)      Requiring the Defendants to return any of Plaintiff's Confidential Information in their possession, control or custody;

c)      Requiring the Defendants, solely at their cost, to immediately provide access to and permit a forensic copy be made by Plaintiff's chosen ESI vendor of all of their computers (including, but not limited to, iPads), Personal Digital Assistants, mobile emails or smartphone devices (including, but not limited to, Blackberries, cellular phones,

text messaging devices, iPhones, Androids, etc.) and storage media (including, but not limited to, flash drives, USB drives, external hard drives, DVDs, CDs, etc.);

d)     Requiring the Defendants to confidentially provide Plaintiff's chosen ESI vendor with the user names and passwords of any personal email accounts used by the Defendants and permit access to and a forensic copy to be made of the contents of any such email accounts to verify the return, removal and destruction of all Akuna's Confidential Information;

d)     Reasonable attorneys' fees and costs against the Defendants, as allowed under the Employment Agreements; and

e)     Such other and further relief as this Court may deem proper.

## COUNT II – FEDERAL TRADE SECRET MISAPPROPRIATION
### (All Defendants)

53.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 44 above as the allegations of this paragraph 53.

54.     Akuna is the owner of valid and enforceable trade secrets including, but not limited, to the proprietary technology, trading strategies and mathematical models set forth in Para. 29 (a) - (d) above.

55.     All of Akuna's trade secrets are confidential, proprietary, and highly valuable secrets; and not generally known or readily ascertainable. Akuna has taken reasonable precautions to maintain the secrecy of its trade secrets including maintaining confidentiality provisions in employment agreements with key employees, secured password-protected networks and databases, and insisting on robust confidentiality agreements with third-parties to whom the information is disclosed.

LP 15065360.7 \ 43828-118755

15

56.     Defendants agreed to keep Akuna's trade secrets confidential and further agreed that those trade secrets were owned by Akuna.

57.     Defendants never received Akuna's permission to disclose any of its Confidential Information, including its trade secrets, to Belvedere.

58.     Belvedere knew, or reasonably should have known, that Defendants were obligated to keep Akuna's trade secrets confidential and refrain from unauthorized use of those trade secrets.

59.     Belvedere knew, or reasonably should have known, that Defendants did not—and still do not—have permission to disclose any of Akuna's Confidential or trade secrets to Belvedere.

60.     Belvedere will inevitably acquire access to Akuna's Confidential Information, including its trade secrets, through its relationship with Defendants, giving it the ability to leverage, commercially exploit, and otherwise use Akuna's Confidential Information, including its trade secrets, without permission or authorization.

61.     Belvedere had notice that Akuna's trade secrets were confidential, proprietary, and highly valuable, and was obtaining access to Akuna's trade secrets through its relationship with the Defendants.

62.     Defendants will not be able to perform their duties and responsibilities for Belvedere without inevitably disclosing and using the trade secrets of Akuna they learned during their employment with Akuna and that are protected by law.

63.     The foregoing acts constitute misappropriation or threatened misappropriation of Akuna's trade secrets under the Defend Trade Secret Act, 28 U.S.C. § 1836.

64.     The conduct of Defendants was malicious, deliberate, and willful, or in the alternative at least grossly negligent.

65.     Defendants' misappropriation or threatened misappropriation of Akuna's trade secrets has caused and/or will cause damage to Akuna in an amount to be determined at trial.

WHEREFORE, Akuna Capital LLC requests that this Court enter judgment against the Defendant and award the following relief:

a)      Preliminary and permanent injunctions restraining and enjoining the Defendants from continuing to breach their Employment Agreements, specifically enforcing the non-solicitation and non-competition covenant of their Employment Agreements) for the term of eighteen (18) months from the date of the entry of judgment herein;

b)      Preliminary and permanent injunctions restraining and enjoining the Defendants from continuing to breach their Employment Agreements;

b)      Requiring the Defendants to return any of Plaintiff's Confidential Information in their possession, control or custody;

c)      Requiring the Defendants, solely at their cost, to immediately provide access to and permit a forensic copy be made by Plaintiff's chosen ESI vendor of all of their computers (including, but not limited to, iPads), Personal Digital Assistants, mobile emails or smartphone devices (including, but not limited to, Blackberries, cellular phones, text messaging devices, iPhones, Androids, etc.) and storage media (including, but not limited to, flash drives, USB drives, external hard drives, DVDs, CDs, etc.);

d)      Requiring the Defendants to confidentially provide Plaintiff's chosen ESI vendor with the user names and passwords of any personal email accounts used by the Defendants and permit access to and a forensic copy to be made of the contents of any such email accounts to verify the return, removal and destruction of all Akuna's Confidential Information;

d)      Reasonable attorneys' fees and costs against the Defendants, as allowed under the Employment Agreements; and

e)    Such other and further relief as this Court may deem proper.

## COUNT III – BREACH OF CONTRACT
### (All Defendants)

66.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 44 above as the allegations of this paragraph 66.

67.    The non-solicitation and non-compete covenants are reasonably necessary to protect Akuna's legitimate business interests, including its interests in the Confidential Information and the long-term broker and counter-party relationships to which the Defendant were given access by reason of their employment at Akuna.

68.    Defendants have breached their Employment Agreements by assisting Belvedere in its attempts to compete with Akuna.

69.    Defendants have further breached their Employment Agreements by using or inevitably disclosing Akuna's Confidential Information to their new employer, Belvedere.

70.    Defendants have breached their Employment Agreements by engaging in solicitation of coworkers and interfering in the employment relationships between those co-workers and Akuna.

71.    Akuna has complied with and performed all obligations required of it under the Employment Agreements.

72.    Defendants' wrongful actions will or have proximately caused damage to Akuna's legitimate business interests, competitive position, goodwill, and reputation and deny Akuna the benefit of its bargain with respect to the Employment Agreements.

73.     Akuna has been injured irreparably as a direct and proximate result of the breaches of contract by Defendants and has suffered damages in an amount to be proved at trial.

WHEREFORE, Akuna Capital LLC requests that this Court enter judgment against the Defendants and award the following relief: actual damages to be proved at trial, along with unjust enrichment to be proved at trial; reasonable attorneys' fees and costs against the Defendants as allowed under the Employment Agreements; and such other and further relief as this Court may deem proper.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS
### (All Defendants)

74.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 44 above as the allegations of this paragraph 74.

75.     The Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*, prohibits the misappropriation and threatened misappropriation of trade secrets.

76.     ITSA defines a trade secret as:

> Information, including, but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that:

> (1) Is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

77.     Akuna's Confidential Information, misappropriated and/or threatened to be misappropriated by the Defendants, constitute protectable "trade secrets" under ITSA, and Akuna has taken reasonable steps to maintain the confidentiality of its trade secrets.

78.     The Defendants' inevitable disclosure and use of Akuna's Confidential Information constitutes an actual and continuing misappropriation of trade secrets in violation of ITSA.

79.     Defendants' actions in accepting employment with Belvedere for the purpose of disclosing Plaintiff's Confidential Information constitutes misappropriation and/or threatened misappropriation of Akuna's trade secrets and provides proof of their intent to benefit themselves and their new employer to the detriment of Akuna.

80.     All of Akuna's trade secrets are confidential, proprietary, and highly valuable secrets; and not generally known or readily ascertainable. Akuna has taken reasonable precautions to maintain the secrecy of its trade secrets including maintaining confidentiality provisions in employment agreements with key employees, secured password-protected networks and databases, and insisting on robust confidentiality agreements with third-parties to whom the information is disclosed.

81.     Defendants agreed to keep Akuna's Confidential Information confidential and further agreed that those trade secrets were owned by Akuna.

82.     Defendants never received Akuna's permission to disclose any of its Confidential Information, including its trade secrets, to Belvedere.

83.     Belvedere knows that Defendants are obligated to keep Akuna's trade secrets confidential and refrain from unauthorized use of those trade secrets.

84. Belvedere knows that Defendants did not—and still do not—have permission to disclose any of Akuna's Confidential or trade secrets to Belvedere.

85. Defendants, on information and belief, intend to leverage and commercially exploit Akuna's trade secrets for their own financial benefit.

86. Belvedere has notice that Akuna's trade secrets are confidential, proprietary, and highly valuable, and will be obtaining access to Akuna's trade secrets through its relationship with Defendants.

87. The foregoing acts constitute trade secret misappropriation of Akuna's trade secrets under the Defend Trade Secret Act, 28 U.S.C. § 1836.

88. The conduct of Defendants was malicious, deliberate, and willful, or in the alternative at least grossly negligent.

89. Defendants intent to misappropriate Akuna's Confidential Information has caused and will continue to cause damage to Akuna in an amount to be determined at trial.

90. Unless Defendants are enjoined and restrained from possessing or utilizing Akuna's Confidential Information, Akuna will suffer substantial and irreparable injury for which there is no adequate remedy at law.

91. Defendants' misappropriation of Akuna's Confidential Information, both actual and threatened, is subject to and grounds for an award of injunctive relief and other appropriate relief under ITSA.

92. As a proximate result of Defendants' misappropriation of Akuna's Confidential Information, Akuna has been financially damaged in an amount to be proven at trial.

93.     Defendants' conduct was willful and malicious in that they engaged in the misappropriation with the specific intent to cause injury to Akuna. Akuna is, therefore, entitled to an award of exemplary damages and reasonable costs and attorneys' fees against the Defendants in accordance with the provisions of the ITSA.

WHEREFORE, Akuna Capital LLC requests that this Court enter judgment against the Defendants and award the following relief:

a)      Preliminary and permanent injunctive relief restraining and enjoining the Defendants from using, disseminating, or disclosing Akuna's Confidential Information;

b)      Requiring the Defendants to return to Akuna all Confidential Information in their possession, control or custody;

c)      Requiring the Defendants, solely at their cost, to immediately provide access to and permit a forensic copy be made by Akuna's chosen ESI vendor of all of their computers, Personal Digital Assistants, mobile emails or smartphone devices (including, but not limited to, Blackberries, cellular phones, text messaging devices, iPhones, Androids, etc.) and storage media (including, but not limited to, flash drives, USB drives, external hard drives, DVDs, CDs, etc.);

d)      Requiring Defendants to confidentially provide Akuna's chosen ESI vendor with the user names and passwords of any personal email accounts used by the Defendants and permit access to and a forensic copy to be made of the contents of any such email accounts to verify the return, removal and destruction of all Akuna's trade secrets;

e)      Awarding Akuna monetary damages to which they are legally entitled;

f)      Awarding Akuna exemplary damages of twice the damages proven under ITSA;

g)      Awarding Akuna its reasonable attorneys' fees and costs; and

h)      Any other relief this Court deems just and appropriate.

## COUNT V – BREACH OF FIDUCIARY DUTY
### (All Defendants)

94.      Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 44 above as the allegations of this paragraph 94.

95.      At all times during their employment with Akuna, the Defendants owed a fiduciary duty of complete loyalty and fidelity to Akuna.

96.      At all times during their employment with Akuna, the Defendants were obligated to act solely and exclusively in Akuna's best interest and were prohibited from acting in a manner contrary to Akuna's legitimate business interests.

97.      While still employed by Akuna, the Defendants breached their fiduciary duties and obligations to Akuna by planning as a team to resign and take employment with, and disclose Confidential Information to, a competitor, Belvedere.

98.      While still employed by Akuna, the Defendants breached their fiduciary duties and obligations to Akuna by, on information and belief, providing such Confidential Information to Belvedere.

99.      On information and belief, the Defendants additionally breached their fiduciary duties to Akuna by simultaneously acting on Belvedere's behalf and advancing the interests of Belvedere while still employed by Akuna, all to Akuna's detriment.

100.      Akuna has been injured as a direct and proximate result of the Defendants' breach of fiduciary duty and has suffered damages in an amount to be proven at trial.

WHEREFORE, Akuna Capital LLC requests that this Court enter judgment against the Defendants and award the following relief: actual damages to be proved at trial, along with unjust enrichment to be proved at trial; reasonable attorneys' fees and costs against the Defendants as allowed under the Employment Agreements; and such other and further relief as this Court may deem proper.

Dated:  August 9, 2019                                  Respectfully submitted,

                                                        **AKUNA CAPITAL LLC**

                                                        By: ___s/ Gary I. Blackman_____
                                                              One of Its Attorneys

Gary I. Blackman
Peter F. Donati
Erin M. Mayer
**LEVENFELD PEARLSTEIN, LLC**
2 N. LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380 – Telephone
(312) 346-8434 – Facsimile
gblackman@lplegal.com
pdonati@lplegal.com
emayer@lplegal.com